**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IRANIAN ALLIANCES ACROSS BORDERS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 8:17-cv-02921-TDC |
| | ) | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| EBLAL ZAKZOK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02969-TDC |
| | ) | |
| DONALD TRUMP, in his official capacity as President of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO STAY</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 2

I.    Prior Proceedings ................................................................................................... 2

II.   Plaintiffs' Requests for Discovery ..................................................................... 4

STANDARD OF REVIEW ........................................................................................... 6

ARGUMENT ................................................................................................................... 6

I.    The Court Should Stay All Further Proceedings Pending Resolution of Appellate Proceedings ................................................................................................... 7

II.   At A Minimum, the Court Should Stay Discovery Given the Heavy Burden It Would Impose on This Court and the Parties ................................................................. 12

      A.    The Forthcoming Appellate Decisions Will Likely Provide Important Guidance Regarding Discovery ........................................................................... 12

      B.    Plaintiffs Have Not Justified a Need for Immediate Discovery, and Any Such Discovery is Likely to Be Heavily Burdensome, Intrusive, and Implicate Privileged Material ................................................................................ 14

III.  The Requested Stay Would Be Reasonable in Length, and Would Not Cause Any Prejudice to Plaintiffs ....................................................................................... 21

CONCLUSION ............................................................................................................... 22

## INTRODUCTION

Currently pending before the *en banc* Fourth Circuit Court of Appeals is the Government's appeal from this Court's preliminary injunction, prohibiting enforcement of certain sections of Proclamation No. 9645, *Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public Safety Threats*, 82 Fed. Reg. 45,161 (Sept. 27, 2017).   Notwithstanding this ongoing appeal, plaintiffs in two of the cases pending before this Court seek to move forward with their claims; in particular, they request that the Court "allow[] discovery to begin immediately so that the parties can develop the record for a ruling on the merits."   *Iranian Alliances Across Borders (IAAB) v. Trump*, No. 17-cv-2921-TDC (D. Md.), ECF No. 58 at 2; *see also Zakzok v. Trump*, No. 17-cv-2969 (D. Md.), ECF No. 46.

But moving forward with merits proceedings at this stage would be highly inefficient and burdensome.   If the cases were to move forward, the next step would be for the Government to move to dismiss the complaints.   The core legal questions this Court would have to confront in resolving that motion to dismiss, however, are the same legal questions currently at issue before the Fourth Circuit.   Indeed, those same legal questions are also now pending before the Supreme Court, which just today granted the Government's petition for certiorari in *Trump v. Hawaii*, No. 17-965 (U.S.).   Thus, it would be highly inefficient for this Court to move forward with briefing and decision on a motion to dismiss, when many (if not all) of the same legal issues will soon be decided by a binding appellate tribunal.   Given that the forthcoming decisions from the appellate courts will provide important guidance on the legal issues in these cases—if not entirely resolve these cases—it makes eminent sense for this Court to stay further district court proceedings pending resolution of the preliminary-injunction appellate proceedings.

At a minimum, this Court should not permit plaintiffs to immediately begin discovery.   The forthcoming appellate decisions—to the extent they do not dispositively resolve these cases—will

likely provide significant guidance regarding the appropriate scope of discovery, if any.  At present, however, the Government does not believe any discovery is appropriate.  Allowing plaintiffs to pursue discovery, therefore, will almost certainly result in significant motions practice before this Court.  That is especially true given the burdensome and intrusive nature of the discovery that plaintiffs are likely to seek.  At a minimum, then, the Court should not permit discovery to proceed until after the preliminary-injunction appeals are resolved (or at least not until after the Government's motion to dismiss is fully briefed and decided).

In light of the foregoing, a stay of proceedings is amply warranted based on the inefficiencies and burdens imposed on the parties and the Court if these cases were to move forward.  Moreover, the anticipated length of the Government's requested stay is quite modest— only a few months.  During that time, plaintiffs will not suffer any prejudice to their ability to conduct discovery, should it become necessary, at a later date.  Accordingly, the proper course here would be for the Court to stay all further district court proceedings pending resolution of the preliminary-injunction appeals.

## BACKGROUND

### I.     Prior Proceedings

There are three cases filed in the District of Maryland challenging the Proclamation.  The first case, *International Refugee Assistance Project (IRAP) v. Trump*, No. 17-cv-361-TDC, was filed in February 2017 in response to a prior Executive Order.  In October 2017, the *IRAP* plaintiffs amended their complaint and sought preliminary relief against the Proclamation.  After the *IRAP* preliminary-injunction proceedings had begun, the second and third cases—*IAAB* and *Zakzok*— were filed, and the plaintiffs in those cases likewise sought preliminary relief against the Proclamation.  *See IAAB v. Trump*, No. 17-cv-2921-TDC (D. Md. filed October 2, 2017); *Zakzok v. Trump*, No. 17-cv-2969-TDC (D. Md. filed October 6, 2017).

On October 17, 2017, this Court entered an Order and Memorandum Opinion in all three cases enjoining certain aspects of the Proclamation with respect to certain individuals.  *See IRAP*, ECF Nos. 219-220; *IAAB*, ECF Nos. 46-47; *Zakzok*, ECF Nos. 36-37.  On October 20, 2017, Defendants appealed the preliminary injunction in all three cases.  *See IRAP*, ECF No. 223; *IAAB*, ECF No. 50; *Zakzok*, ECF No. 40.

The United States Court of Appeals for the Fourth Circuit formally consolidated all three cases, and designated *IRAP* as the lead case.  *See* Order Consolidating Cases, *IRAP v. Trump*, No. 17-2231 (4th Cir. Oct. 20, 2017), ECF No. 3.  The Fourth Circuit also granted an expedited briefing schedule in the appeals.  *See* Order Setting Schedule, *IRAP*, No. 17-2231 (4th Cir. Oct. 31, 2017), ECF No. 52.  After briefing was completed on that expedited schedule, the *en banc* Fourth Circuit heard oral argument on December 8, 2017.

In addition to the District of Maryland cases, plaintiffs in several other courts also sought to challenge the Proclamation.  *See, e.g.*, *Hawaii v. Trump*, No. 17-cv-50 (D. Haw.).  On October 17, 2017, the court in *Hawaii* entered a temporary restraining order against certain sections of the Proclamation, and on October 20, 2017, the Court converted its temporary restraining order to a preliminary injunction.  *See Hawaii*, ECF Nos. 387, 390.  The Government appealed that preliminary injunction as well.  *See Hawaii*, ECF No. 391.

In both the Fourth Circuit and the Ninth Circuit, the Government moved to stay enforcement of the preliminary injunctions pending the appeals.  The Ninth Circuit stayed the injunction in part.  *See* Order Granting Stay in Part, *Hawaii v. Trump*, No. 17-17168 (9th Cir. Nov. 13, 2017), ECF No. 39.  The Government then requested that the Supreme Court stay both the District of Hawaii and the District of Maryland injunctions.  *See Trump v. Hawaii*, No. 17A550; *Trump v. IRAP*, No. 17A560.  On December 4, 2017, the Supreme Court entered identical orders

staying both injunctions in full.  *See Trump v. Hawaii*, 138 S. Ct. 542 (2017); *Trump v. IRAP*, 138 S. Ct. 542 (2017).  The Supreme Court noted in each Order that, because each court of appeals had decided "to consider the case on an expedited basis, we expect that the Court of Appeals will render its decision with appropriate dispatch."  *Hawaii*, 138 S. Ct. at 542; *IRAP*, 138 S. Ct. at 542.

On December 22, 2017, the Ninth Circuit affirmed the District of Hawaii's injunction in part.  *See Hawaii v. Trump*, No. 17-17168, 2017 WL 6554184 (9th Cir. Dec. 22, 2017).  Following that decision, the Government filed a petition for certiorari on January 5, 2018.  *See Trump v. Hawaii*, No. 17-965 (U.S.).  Earlier today, on January 19, 2018, the Supreme Court granted the Government's petition for certiorari and directed the parties to brief and argue the following four questions:

1. Whether respondents' challenge to the President's suspension of entry of aliens abroad is justiciable.

2. Whether the Proclamation is a lawful exercise of the President's authority to suspend entry of aliens abroad.

3. Whether Proclamation No. 9645 violates the Establishment Clause.

4. Whether the global injunction is impermissibly overbroad.

*See Trump v. Hawaii*, No. 17-965, 583 U.S. ___ (U.S. Jan. 19, 2018).  The Fourth Circuit has not yet ruled in the *IRAP* consolidated appeals.

## II.    Plaintiffs' Requests for Discovery

Notwithstanding these ongoing appellate proceedings, in district court the *IAAB* and *Zakzok* plaintiffs filed pre-motion letters requesting that they be permitted to proceed with discovery.  Specifically, the *IAAB* plaintiffs request entry of a scheduling order to allow the parties to "fully develop the record so that they may file summary judgment motions or go to trial shortly after the interlocutory appeal is resolved."  *IAAB*, ECF No. 58 at 3.  The *IAAB* plaintiffs proposed a discovery schedule pursuant to which discovery would occur over a five-month period

(December 2017 through April 2018). *See id.* The *IAAB* plaintiffs did not specify any topics on which they sought discovery.

The *Zakzok* plaintiffs subsequently filed their own pre-motion letter, stating that they "join the plaintiffs in [*IAAB*] in their request" for entry of a scheduling order "to allow the parties . . . to begin discovery so that this case can proceed efficiently after the interlocutory appeal is resolved." *Zakzok*, ECF No. 46 at 1. The *Zakzok* plaintiffs stated that they "agree that a schedule consistent with the one set forth in the *IAAB* Letter is reasonable and would allow the parties to be ready to file summary judgment motions in May 2018." *Id.* at 3. The *Zakzok* plaintiffs also asserted that certain individuals' visa applications had been "categorically denied" without the opportunity to apply for a waiver under the Proclamation, and therefore they believed there is a "need for prompt discovery on, among other things, the Defendants' implementation of the Proclamation." *Id.*

The Court then scheduled a telephone conference with all of the parties in all three cases to discuss the pre-motion letters. During that telephone conference, the *IRAP* plaintiffs stated that they were not affirmatively requesting permission to begin discovery, but that, in the event the Court were to allow discovery to proceed in *IAAB* and *Zakzok*, the plaintiffs in *IRAP* would also request permission to begin discovery. Ultimately, the Court directed the parties to submit further briefing regarding whether these proceedings should be stayed pending resolution of all appeals, and whether discovery should be permitted to begin. *See IAAB*, ECF No. 61; *Zakzok*, ECF No. 49. The Court also directed the parties to meet-and-confer regarding whether the three cases should be formally consolidated.

Following the conference call with the Court, the parties met-and-conferred regarding whether the cases should be consolidated. The Government represented its position that the cases should be consolidated if they were to move forward, to minimize (to the extent possible) the

burdens associated with forcing the Government to respond to discovery in three separate cases brought by three separate groups of plaintiffs.  In response, the plaintiffs in all three cases stated that they oppose consolidation at this time, and declined to provide their position on whether consolidation would be appropriate if the cases were to move forward into discovery.  *See* Meet-and-Confer Correspondence (attached hereto).

Consistent with the briefing schedule ordered by the Court, the Government now moves to stay all proceedings in both *IAAB* and *Zakzok* pending final resolution of the preliminary-injunction appellate proceedings.

## STANDARD OF REVIEW

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  That power applies "especially in cases of extraordinary public moment," when "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."  *Id*. at 707.  A district court may exercise its broad discretion to promote "economy of time and effort for itself, for counsel, and for litigants."  *DeRosa v. Walsh*, 541 F. App'x 250, 252 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  Where such a stay is considered, the court need not find that the two cases possess identical issues or that resolution of one will control the other; a finding that the cases present substantially similar issues is sufficient.  *See Landis*, 299 U.S. at 254.

## ARGUMENT

This Court should stay all proceedings in these cases pending resolution of the preliminary-injunction appellate proceedings.  Those appeals present many (if not all) of the same legal questions that this Court would have to address in resolving a motion to dismiss, and it would make little sense for the parties to devote time and resources to briefing and deciding those

questions when they are currently pending before the Fourth Circuit.  Indeed, the four questions on which the Supreme Court has now granted review in the *Hawaii* case are the identical questions that this Court would have to confront in connection with the Government's motion to dismiss.

At a minimum, this Court should not allow discovery to proceed in these cases.  Allowing discovery—particularly while important legal questions remain unresolved—would impose a heavy burden on both Defendants and the Court, given the likely topics on which plaintiffs will seek discovery and the virtual certainty that their discovery requests will lead to motions practice before this Court.  All of the time and resources devoted to discovery, moreover, may prove entirely unnecessary depending on whether the Court of Appeals—if not the Supreme Court—conclusively resolves the Proclamation's legality.  Accordingly, a brief stay of proceedings—for the short period of time necessary for appellate proceedings to conclude—is amply warranted.

## I.    The Court Should Stay All Further Proceedings Pending Resolution of Appellate Proceedings

District courts routinely stay proceedings where resolution of an appeal may provide guidance to the district court in deciding issues before it.  *See Landis*, 299 U.S. at 254.  The Fourth Circuit has long recognized, in particular, that a district court may properly exercise its discretion to issue a stay "pending the outcome of a similar suit."  *Amdur v. Lizars*, 372 F.2d 103, 106 (4th Cir. 1967); *see also Hickey v. Baxter*, 833 F.2d 1005 (4th Cir. 1987) (table) ("We find that the district court acted within its discretion in staying proceedings while awaiting guidance from the Supreme Court in a case that could decide relevant issues."); *Preston v. United States*, 2015 WL 221633, at *9 (D. Md. Jan. 15, 2015) (holding motion to dismiss in abeyance "pending the final outcome" of a similar case pending before the Supreme Court, because "a decision at this time would be an inefficient use of the [district] Court's resources"); *In re Mut. Funds Inv. Litig.*, 2011 WL 1540134, at *2 (D. Md. Apr. 20, 2011) ("[A] stay would promote judicial economy by avoiding

the litigation of a set of disputed issues that the Fourth Circuit is likely to soon resolve in a similar case.").

Here, of course, the relevant case on appeal is not just "similar"; it is identical, and the Fourth Circuit's and/or Supreme Court's resolution of the appeal will likely provide this Court with dispositive guidance on some or all of the issues that this Court would need to confront if it permitted the cases to move forward.  For example, if these cases are not stayed, the next step would be that the Government would move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In doing so, the Government would raise, *inter alia*, the same arguments it made in opposition to plaintiffs' preliminary-injunction motion, and the same arguments that it has now raised before the Fourth Circuit in connection with the appeal of the preliminary-injunction motion—*i.e.*, threshold jurisdictional defenses, arguments regarding the proper interpretation of 8 U.S.C. §§ 1152(a) and 1182(f), and the legality of the Proclamation under the different Establishment Clause frameworks.

Indeed, these issues are the very same ones that the Supreme Court has now agreed to decide in connection with the *Hawaii* case.  For example, the Supreme Court granted review on "[w]hether respondents' challenge to the President's suspension of entry of aliens abroad is justiciable."  Petition for Certiorari, *Trump v. Hawaii*, No. 17-965 (U.S. Jan. 5, 2018).  That is *exactly* the same legal question that this Court would have to decide in the context of the Government's motion to dismiss.  Similarly, this Court would also have to decide the Proclamation's validity under the relevant statutes, which the Supreme Court has likewise agreed to consider—*i.e.*, "[w]hether the Proclamation is a lawful exercise of the President's authority to suspend entry of aliens abroad."  *Id.*  Finally, the Supreme Court is also evaluating whether the Proclamation violates the Establishment Clause.  *See Hawaii*, No. 17-965, 583 U.S. ___ (U.S.

Jan. 19, 2018) (directing the parties to brief and argue that question).  It makes little sense for this Court to move forward and decide these legal issues in the context of a motion to dismiss when binding appellate courts—both the *en banc* Fourth Circuit *and* the Supreme Court—are currently considering the exact same issues.

This Court has recognized this very point at an earlier stage of the *IRAP* litigation.  After the Court preliminarily enjoined § 2(c) of Executive Order No. 13,780 ("EO-2"), *see IRAP*, ECF No. 150, and while that injunction was pending before the Fourth Circuit on appeal, the *IRAP* plaintiffs sought leave to file another motion for preliminary relief against § 6 of EO-2.  *See IRAP*, ECF No. 177.  The Government opposed that motion on both jurisdictional and equitable grounds, arguing that it did not make sense for the Court to decide another motion while some (if not all) of the key issues were already on appeal before the Fourth Circuit.  *See IRAP*, ECF No. 180 at 9-12. The Court agreed:

> Even if the Court had jurisdiction over the proposed motion, it would exercise its discretion to stay both the briefing of the motion and its determination pending the Fourth Circuit's review of the March 16, 2017 preliminary injunction.  . . .  The Fourth Circuit's forthcoming analysis on the Establishment Clause claim on appeal would provide this Court with useful guidance on how to resolve the issues to be presented in the proposed motion.

*IRAP*, ECF No. 182 at 5.

Those same reasons of judicial economy apply here, as recognized by the numerous other courts hearing challenges to the Proclamation and other prior policies.  In circumstances similar to those present here, those courts have likewise stayed further district court proceedings pending resolution of ongoing appeals.  For example, after EO-2 was enjoined and the *Hawaii* case was on appeal, the Western District of Washington stayed all further proceedings in its court because "resolution of the *Hawaii* appeal is likely to provide guidance to this court," including by "help[ing] the court in resolving Defendants' motion to dismiss."  *Washington v. Trump*, 2017 WL

2172020, at *2-3 (W.D. Wash. May 17, 2017).  Similarly, with respect to EO-1, the District of

Hawaii stayed further proceedings pending the appeal of the Western District of Washington

injunction:

> Because many of the State's legal arguments presented in its Motion for TRO are
> presently before the Ninth Circuit, it makes little sense to expend the resources
> necessary for a full presentation of those same issues in this forum while awaiting
> guidance from the appellate court. The more efficient course is to await a
> pronouncement from the governing appellate bodies, at which point the bulk of the
> determinative issues may very well be settled in most material respects.

*Hawai'i v. Trump*, 233 F. Supp. 3d 850, 855 (D. Haw. 2017).  Finally, after the Government filed

a petition for certiorari with respect to EO-2, the District Court for the District of Columbia stayed

all further proceedings in a pending challenge because "a stay pending the result of the Supreme

Court's decision is the most appropriate path for conserving the court's resources and adjudicating

these cases in the most efficient manner possible."  *Pars Equality Ctr. v. Trump*, No. 17-cv-255

(D.D.C.), ECF No. 91 at 2 (Order of June 20, 2017).

These are only some of the examples of the stays that have been entered in cases

challenging the Proclamation or other prior policies.[*]  The logic of these cases is equally applicable

here—*i.e.*, when preliminary-injunction appeals are ongoing, it would be inefficient and

burdensome to move forward with additional district court proceedings regarding the same issues.

Indeed, the *IAAB* and *Zakzok* plaintiffs themselves recognize that it makes little sense to

proceed with further merits briefing until *after* the preliminary-injunction appeals have concluded.

---

[*] *See also, e.g.*, *Arab Am. Civil Rights League v. Trump*, 2017 WL 2501060 (E.D. Mich. June 9, 2017); *Ali v. Trump*, 2017 WL 2222873, at *1 (W.D. Wash. May 22, 2017); *Pars Equality Ctr. v. Trump*, No. 17-cv-255 (D.D.C.), ECF No. 84 (Order of May 11, 2017); *Washington v. Trump*, 2017 WL 1050354 (W.D. Wash. Mar. 17, 2017); *Ali v. Trump*, 241 F. Supp. 3d 1147, 1150 (W.D. Wash. 2017).  Several cases have been stayed with the plaintiffs' consent as well.  *See, e.g.*, *Sarsour v. Trump*, No. 17-cv-120 (E.D. Va.), ECF No. 50 (Order of Jan. 9, 2018); *Universal Muslim Assoc. of Am. (UMAA) v. Trump*, No. 17-cv-537 (D.D.C.), Minute Order of Nov. 3, 2017.

*See IAAB*, ECF No. 58 at 3 (asserting that "the parties should fully develop the record so that they may file summary judgment motions or go to trial shortly *after the interlocutory appeal is resolved*" (emphasis added)); *Zakzok*, ECF No. 46 at 1 (requesting entry of a scheduling order "so that this case can proceed efficiently *after the interlocutory appeal is resolved*" (emphasis added)). This recognition undermines plaintiffs' effort to resist the Government's stay motion here:  for the same reasons it does not make sense to proceed with summary-judgment briefing prior to resolution of the appellate proceedings, it also does not make sense to proceed with motion-to-dismiss briefing given the identical nature of the legal issues.

Moreover, plaintiffs' pre-motion letters simply assume the premise of their argument—that further proceedings will in fact be necessary after the preliminary-injunction appeals are resolved. *See, e.g.*, *IAAB*, ECF No. 58 at 1 (requesting permission to begin discovery "so that the case can be ready for resolution on the merits expeditiously after the interlocutory appeal is resolved"); *Zakzok*, ECF No. 46 at 1.  But that assumption is itself highly speculative.  Even when the Supreme Court has granted certiorari in a case arising at the preliminary-injunction stage, the Court has frequently gone on to resolve the merits of the legal claims with little attention paid to the preliminary nature of the case.  *See, e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014); *Arizona v. United States*, 567 U.S. 387 (2012).  Indeed, the prior Supreme Court proceedings regarding EO-2 highlight this point:  the parties' briefs paid little attention to the preliminary-injunction factors, and instead focused on arguing the ultimate legality of EO-2.  *See, e.g.*, Brief for Respondents, *Trump v. IRAP*, No. 16-1436 (filed Sept. 11, 2017), *available at* http://www.scotusblog.com/wp-content/uploads/2017/09/2017-09-11-IRAP-merits-brief.pdf. There is at least a significant possibility, therefore, that no further proceedings will be necessary after the preliminary-injunction appeals are resolved—which further underscores why it would be

an imprudent use of the Court's and the parties' resources to proceed now, without awaiting guidance (if not dispositive resolution) from the appellate courts.

Particularly given the identity of issues between the ongoing preliminary-injunction appeals and the issues this Court would be required to decide if it moved forward with a motion to dismiss, a stay of all district court proceedings is amply warranted pending resolution of the appellate proceedings, including proceedings in the Supreme Court.

## II.   At A Minimum, the Court Should Stay Discovery Given the Heavy Burden It Would Impose on This Court and the Parties

Even if this Court is not inclined to stay all proceedings, it certainly should not permit discovery to proceed at this time.  Assuming the appellate decisions are not fully dispositive of these cases, the decisions will very likely provide guidance regarding the availability and scope of discovery—issues that are currently disputed between the parties.  Thus, proceeding with discovery now would virtually guarantee significant motions practice before this Court.  That is especially true given the expansive and intrusive nature of the discovery that plaintiffs are likely to propound.  In order to avoid the potential waste of resources associated with proceeding with discovery now, as well as the significant burdens associated with allowing discovery to proceed, this Court should, at a minimum, not permit discovery to proceed until after the preliminary-injunction appeals are concluded (or at least until after a motion to dismiss is fully briefed and decided).

### A.   The Forthcoming Appellate Decisions Will Likely Provide Important Guidance Regarding Discovery

Not only will the Fourth Circuit's and Supreme Court's decisions likely inform the legal analysis regarding the validity of the Proclamation, those decisions will likely provide important guidance regarding the scope and availability of discovery as well.

As discussed during the telephone conference, the Government's view is that no discovery

is appropriate because, under the applicable law, the Proclamation is valid if it is supported by a "facially legitimate and bona fide reason," which should be judged according to the four corners of the Proclamation itself. *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972); *see Fiallo v. Bell*, 430 U.S. 787, 792-96 (1977). Moreover, even if a court could look beyond the four corners of the Proclamation, any review would be limited to "openly available data" that is accessible to an "objective observer," like the law's text or obvious effects, the policy it replaced, official public statements of the law's purpose, or "comparable official act[s]." *McCreary Cty. v. ACLU*, 545 U.S. 844, 862-63 (2005). Thus, there would be no need for discovery of any internal Government documents regarding the Proclamation.

These issues—the governing framework for considering the Proclamation's legality, including what evidence is relevant—are now squarely before the Fourth Circuit. *See, e.g.*, First Brief of Appellants at 39-53, *IRAP v. Trump*, No. 17-2231(L) (4th Cir. Nov. 1, 2017), ECF No. 58. They are also now squarely pending before the Supreme Court. *See* Part I, *supra*. To be sure, plaintiffs disagree that *Mandel* governs review of the Proclamation. But "the salient point for purposes of Defendants' stay motion is that resolution of the . . . appeal is likely to provide guidance to this court on that issue and by extension on the appropriate scope of discovery." *Washington*, 2017 WL 2172020, at *2; *see also id.* ("Although the Ninth Circuit is not considering discovery issues on appeal, it is likely to decide legal issues that will impact the court's resolution of the parties' discovery disputes here by clarifying 'the applicable law or relevant landscape of facts that need to be developed.'" (quoting *Hawaii*, 2017 WL 536826, at *5)). Thus, it makes good sense to postpone discovery until after the Court of Appeals and Supreme Court have issued their decisions, thereby providing further guidance on the applicable legal framework for evaluating the Proclamation's validity.

In contrast, if discovery were to begin before the appeals were resolved, that would simply lead to significant motions practice between the parties regarding the availability and scope of discovery.  This motions practice would not move the cases closer to resolution, but would instead consume significant time and resources of both the parties and the Court—all of which could have been avoided if discovery were not permitted until after the appellate proceedings concluded.

Indeed, allowing discovery to begin now would only further complicate matters once the preliminary-injunction appeals are concluded.  To the extent the appellate courts provide dispositive resolution of these cases, then all of the time and resources devoted to discovery will have been entirely for naught.  Even if the appellate courts do not dispositively resolve these cases, however, that will still lead to wasted time and resources for the parties and the Court:  once the Fourth Circuit and Supreme Court have ruled, this Court—presumably with the assistance of the parties—would have to go back and re-evaluate all of its prior decisions to ensure consistency with the governing legal framework announced by the appellate court.  Accordingly, the most sensible and efficient approach—for both the parties and the Court—is to stay discovery until after appellate proceedings conclude. *See Washington*, 2017 WL 1050354, at *5 ("Considerable judicial resources may be wasted if the appellate court's controlling decision changes the applicable law or the relevant landscape of facts that need to be developed.").

**B.**    **Plaintiffs Have Not Justified a Need for Immediate Discovery, and Any Such Discovery is Likely to Be Heavily Burdensome, Intrusive, and Implicate Privileged Material**

Notably absent from plaintiffs' pre-motion letters is any explanation as to why they should be permitted discovery at this early stage of the proceedings—before resolution of any motion to dismiss, and before conclusion of the ongoing appeals.  The plaintiffs only vaguely mention the topics on which they seek discovery, and nowhere do they explain how their anticipated discovery would actually be relevant to their claims.

**1.** The *Zakzok* plaintiffs are the only ones to mention any specific topic on which they seek discovery. Their pre-motion letter makes various assertions regarding the implementation of the waiver provision of the Proclamation, and then states that they would like discovery into "among other things, the Defendants' implementation of the Proclamation." *Zakzok*, ECF No. 46 at 3.

As an initial matter, it is unclear how information regarding the Government's after-the-fact implementation of the Proclamation would shed light on whether the Proclamation was valid at its issuance. And specifically with respect to the waiver provision, the *Zakzok* plaintiffs relied on it nowhere in connection with their merits arguments. *See Zakzok*, ECF No. 33. At most, the waiver provision's implementation would relate only to the Government's ripeness argument. But that ripeness argument is no longer relevant with respect to at least one Plaintiff in *IAAB*, John Doe #6, whose mother has now been denied a waiver under the Proclamation. *See* Mot. for Judicial Notice, *IRAP v. Trump*, No. 17-2231(L) (4th Cir. Dec. 22, 2017), ECF No. 145-1. Thus, it is entirely unclear how discovery on the Proclamation's implementation would actually bring these cases any closer to resolution on the merits.

More fundamentally, that type of discovery—about individuals' (or categories of individuals') visa applications and/or denials—would run headlong into the confidentiality protections afforded visa records under 8 U.S.C. § 1202(f), as well as principles of consular non-reviewability. Plaintiffs have repeatedly insisted that their claims seek only to challenge a general policy, not the basis for any actual visa denials. Allowing plaintiffs to proceed with discovery into how the Proclamation has been implemented with respect to specific individuals' visa grants or denials would go beyond even plaintiffs' description of what the doctrine of consular non-reviewability permits, and would represent a significant intrusion into the State Department's consular operations. Thus, the only topic of discovery mentioned by the *Zakzok* plaintiffs is

irrelevant, overly intrusive, and contrary to U.S. law.

**2.** Because the *IAAB* plaintiffs have not specified or limited the subjects on which they seek discovery, the Court can only assume that they will seek extremely broad discovery on a variety of topics. To demonstrate the potential breadth of what the *IAAB* plaintiffs might seek, the Court need only refer back to what the *IRAP* plaintiffs sought at an earlier stage of these proceedings (and presumably what the *IRAP* plaintiffs would again seek if they are also permitted to engage in discovery).

In connection with the *IRAP* plaintiffs' claims against EO-2, they sought expansive discovery on a variety of topics. For example, they submitted four document requests, two of which sought "[a]ll memoranda, policies, projections, reports, data, summaries, or similar documents relating to the development of the January 27 Order," as well as "relating to the development of any replacement for the January 27 Order." *IRAP*, ECF No. 63-1 at 7 (Requests for Production of Documents Nos. 1 and 3).

This type of discovery—seeking internal Government documents relating to the development of the Proclamation—is also irrelevant to plaintiffs' claims, as plaintiffs themselves have admitted. At the preliminary-injunction hearing regarding the Proclamation, counsel for *IRAP*—when arguing on behalf of all plaintiffs—affirmatively stated that internal Government documents were not relevant to their claims:

> THE COURT: I think I read in your papers that you said the government's refused to provide the underlying report [from the Secretary of Homeland Security to the President making recommendations about the Proclamation]. Does that mean that you asked for it or how do you know that they've refused to do that or from the other case?

> MR. JADWAT: They have said that they will not provide it publicly in the other case and that's, you know, that's their decision. *And we're not suggesting that there's a need for this Court to look at the report because the question is what the reasonable observer would perceive and understand from the facts that are readily*

*available to the public.*

Prelim. Inj. Hr'g Tr. at 21-22 (emphasis added).  Thus, plaintiffs have conceded that internal Government documents are irrelevant to their claims.  This concession should, at a minimum, foreclose plaintiffs from seeking immediate discovery of such documents prior to resolution of the ongoing appeals.

**3.**  To the extent plaintiffs might nonetheless be permitted to pursue this type of discovery notwithstanding the information's lack of relevance, any such discovery would be highly burdensome and intrusive, providing an independent reason why it should not be permitted at this stage.  The prior *IRAP* requests are again a perfect example.  It would not be a stretch for plaintiffs' broadly worded document requests to extend to huge swaths of documents and information stored at the Department of Homeland Security, the Department of State, and the Office of the Director of National Intelligence: *e.g.*, policy memoranda regarding the Proclamation and any other 'related' policies; data relating to visa admissions and entry of foreign nationals; intelligence reports regarding potential future terrorist attacks; summaries of prior terrorism investigations and prosecutions; and numerous other sensitive documents related to our Nation's foreign relations, national security, and immigration activities.  Even apart from the sheer volume of documents being burdensome, the contents of such documents would almost certainly be highly sensitive— touching on law-enforcement sensitivities and potentially classified information.

Moreover, many of those documents would also be subject to other privileges.  Records pertaining to the issuance or refusal of visa applications are considered confidential and protected from disclosure by statute.  *See* 8 U.S.C. § 1202(f).  Additionally, the *IRAP* document requests, on their face, purport to seek privileged information—*i.e.*, documents related to the development of a policy.  Any such documents would clearly qualify as pre-decisional and deliberative, thus subject

-17-

to the Government's deliberative process privilege.  *See City of Virginia Beach v. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993) ("To invoke the privilege successfully, the government must show that, 'in the context in which the materials are used,' the documents are both predecisional and deliberative."); *Jones v. Murphy*, 256 F.R.D. 510, 515-16 (D. Md. 2008) (Gauvey, M.J.) ("The executive or deliberative-process privilege exists to protect the governmental decision-making process. It protects from disclosure advice, opinions and recommendations that are part of the decision-making process; the goal is 'to prevent injury to the quality of agency decisions.'"), *aff'd*, 2009 WL 604937 (D. Md. Feb. 23, 2009).

Additionally, given that the policy challenged here is a Proclamation signed by the President, plaintiffs may also try to seek discovery from the Executive Office of the President.  In doing so, plaintiffs could threaten to place this Court on a collision course with the presidential communications privilege and/or the President's more general Executive Privilege.  *See generally Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) ("The presidential communications privilege, a 'presumptive privilege for [p]residential communications,' preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)); *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997) (privilege protects "communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate").

When considering how (and whether) to proceed in civil discovery, however, courts are obligated to avoid intruding on these sensitive privileges of the Executive Branch.  *See Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 385 (2004) ("The high respect that is owed

-18-

to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery," and "the Executive's 'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of litigation against it."); *United States v. McGraw-Hill Cos., Inc.*, No. 13-cv-0779-DOC (JCGx), 2014 WL 8662657, at *8 (C.D. Cal. Sept. 25, 2014) (explaining that courts should take a "methodical approach" to discovery of White House documents because "[t]he Supreme Court has been crystal clear: courts must ensure that the invocation of executive privilege is the last resort"). The burden to justify potentially intrusive discovery falls squarely on plaintiffs.  *See Cheney*, 542 U.S. at 388 (discovery is permissible "only after the party requesting the information . . . ha[s] satisfied his burden of showing the propriety of the requests," because the Executive Branch does not "bear the onus of critiquing the unacceptable discovery requests line by line").  Plaintiffs here certainly have not carried their burden of demonstrating why they should be entitled to discovery at this stage, particularly when they will likely seek privileged or otherwise sensitive materials.

**4.**  In short, it appears (based on the limited record available) that if discovery were to proceed, plaintiffs are likely to request discovery on irrelevant materials, in an overly burdensome and intrusive manner, and in a way that would threaten significant Executive Branch privileges. All of those problems would only be exacerbated by the fact that there are three separate sets of plaintiffs here, each of which has expressed interest in pursuing discovery against the Government. It would be tremendously burdensome for the Government to respond to three separate sets of plaintiffs, in three separate actions, all pursuing discovery against the same challenged policy— and to do so all within a five-month period as the *IAAB* and *Zakzok* plaintiffs suggest.  Even if it were possible to decrease some of those burdens by formally consolidating the actions for pre-trial purposes, all three sets of plaintiffs currently oppose consolidation of the cases, and refuse to state

whether they would agree to consolidation if the cases moved forward into discovery.  *See* Meet-and-Confer Corresp. (attached hereto).  Thus, proceeding with discovery in these three separate cases would be tremendously onerous for the Government.

In these circumstances—involving burdensome, intrusive discovery into sensitive areas, from multiple parties in multiple different actions—the Court should not allow discovery to proceed before resolution of the ongoing appeals, or at a minimum before resolving the Government's threshold arguments presented in a motion to dismiss.  Just recently the Supreme Court was confronted with a lower court order requiring the Government to disclose numerous documents, entered prior to the lower court's resolution of the Government's threshold defenses.  The Supreme Court held that the district court should have "first resolved the Government's threshold arguments" before ordering disclosure, because "those [threshold] arguments, if accepted, likely would eliminate the need for" such disclosure.  *In re United States*, 138 S. Ct. 443, 445 (2017).  That holding is directly applicable here:  this Court should not allow discovery to proceed before resolving the Government's threshold arguments, any of which, if accepted, would eliminate the need for discovery here.  *See id.* at 444-45.  And given that those threshold arguments are now pending before both the Fourth Circuit *and* the Supreme Court, there is even more reason here not to proceed with discovery.  *Cf. id.* at 445 (directing that the district court should "rule on the Government's threshold arguments and, in doing so, may consider certifying that ruling for interlocutory appeal," and only thereafter should the district court consider whether disclosure of documents is "necessary and appropriate").

Again, allowing discovery to proceed will only result in significant motions practice before this Court regarding the relevance, burden, and potential privilege issues associated with plaintiffs' requests.  At best, this Court will need to re-evaluate its rulings on all of those issues once the

appellate courts announce the governing legal framework.  At worst, all of that motions practice (and the other burdens of discovery) will have been wholly unnecessary because the appellate courts will dispositively resolve these cases.  In either scenario, it is far more efficient for both the parties and the Court simply to stay discovery pending resolution of the ongoing appellate proceedings, including Supreme Court proceedings.

### III.    The Requested Stay Would Be Reasonable in Length, and Would Not Cause Any Prejudice to Plaintiffs

In contrast to the huge (and potentially wasteful) drain on resources that will result if this case proceeds before the ongoing appeals are resolved, plaintiffs will not suffer any prejudice to their ability to conduct discovery during the brief period in which the Government is requesting that proceedings be stayed.

As this Court is aware, the Government has moved with great speed at every stage of this litigation, and the ongoing appeals are proceeding in an expedited manner.  After the Government noticed its appeal of the preliminary injunction on October 20, 2017, the parties fully briefed the matter and the *en banc* Fourth Circuit held oral argument on December 8, 2017—less than two months after the appeal was first noticed.  The parties have moved with similar speed in the *Hawaii* litigation: the Government noticed its appeal on October 24, 2017; the Ninth Circuit held argument on December 6, 2017; the Ninth Circuit issued its decision on December 22, 2017; the Government filed its petition for certiorari two weeks later, on January 5, 2018; and the Supreme Court granted that petition earlier today, on January 19, 2018.

Consistent with the pace at which these cases have been progressing, any stay of proceedings to allow appellate proceedings to conclude will be relatively short.  The Supreme Court itself has noted that it "expect[s] that the Court of Appeals will render its decision with appropriate dispatch." *IRAP*, 138 S. Ct. at 542.  Indeed, even plaintiffs acknowledge that appellate

proceedings will likely conclude soon, because they suggest that discovery should end in May 2018, which would allow the parties (in their view) to "file summary judgment motions or go to trial shortly after the interlocutory appeal is resolved." *IAAB*, ECF No. 58 at 3.

At most, then, the Government's requested stay would be for a short period of a few months. That is not an inordinate amount of time, as other courts have recognized. *See Washington*, 2017 WL 1050354, at *4 ("Based on the speed with which the Ninth Circuit proceeded in the previous appeal in this case, the court also does not anticipate that a stay will last long."); *In re Mut. Funds Inv. Litig.*, 2011 WL 1540134, at *2 ("In this case, because the Steinberg case has already been fully briefed on appeal and is ready to be argued before the Fourth Circuit, the length of the stay should not be inordinate.").

In their pre-motion letters, the plaintiffs argued that they "suffer irreparable harm each day the Proclamation remains in effect." *IAAB*, ECF No. 58 at 2. But they made that same argument to the Supreme Court, and the Supreme Court nonetheless permitted the Proclamation to go into effect while the litigation unfolds. Nothing about that stay order should prompt this Court to move forward with the case in an inefficient or burdensome manner, as plaintiffs now suggest. To the contrary, the Supreme Court's stay order underscores why a stay of further proceedings is amply warranted here: the legal landscape continues to be in flux; the appellate courts will act "with appropriate dispatch" in resolving the preliminary-injunction appeals; and the Supreme Court itself has now agreed to determine the ultimate legality of the Proclamation. Rather than moving forward with further proceedings now, the Supreme Court's stay order thus demonstrates why a short stay of proceedings for a few months is appropriate in these cases.

## CONCLUSION

The Court should stay all proceedings in *IAAB* and *Zakzok* pending final resolution of the preliminary-injunction proceedings before the Fourth Circuit and/or the Supreme Court.

Dated: January 19, 2018     Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

HASHIM M. MOOPPAN
Deputy Assistant Attorney General

STEPHEN M. SCHENNING
Acting United States Attorney

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Director, Federal Programs Branch

*/s/  Daniel Schwei*
DANIEL SCHWEI (Bar No. 96100)
MICHELLE R. BENNETT (Bar No. 806456)
KEVIN SNELL
JOSEPH C. DUGAN
Senior Trial Counsel / Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington DC 20530
Tel: (202) 305-8693
Fax: (202) 616-8470
E-mail: daniel.s.schwei@usdoj.gov

-23-