**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, *et al*., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 8:17-cv-00361-TDC |
| DONALD TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) ) | |
| Defendants. | ) ) | |
| IRANIAN ALLIANCES ACROSS BORDERS, *et al*., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 8:17-cv-02921-TDC |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| EBLAL ZAKZOK, *et al*., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:17-cv-02969-TDC |
| DONALD TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' COMBINED REPLY MEMORANUDUM IN SUPPORT OF**
**DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.  Plaintiffs' Statutory Claims Under the APA Should Be Dismissed ................................... 3

    A.  Plaintiffs' APA Claims Fail at the Outset for Several Threshold Reasons.............. 3

    B.  None of Plaintiffs' APA Claims Plausibly States a Claim on the Merits................ 8

    C.  Plaintiffs' Statutory Claims Are Foreclosed by Principles of Non-
        Reviewability ......................................................................................................... 10

II. Plaintiffs' Constitutional Claims Should Be Dismissed .................................................... 11

    A.  All of Plaintiffs' Constitutional Claims Are Foreclosed by the Supreme
        Court's Decision in *Trump v. Hawaii* ................................................................... 11

    B.  Plaintiffs' Constitutional Claims Fail for Additional Reasons.............................. 17

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*Ancient Coin Collectors Guild v. Customs & Border Prot.*,
801 F. Supp. 2d 383 (D. Md. 2011),
*aff'd*, 698 F.3d 171 (4th Cir. 2012) ....................................................................... 4-5

*Angelex Ltd. v. United States*,
723 F.3d 500 (4th Cir. 2013) ................................................................................. 7

*Armstrong v. Exceptional Child Ctr., Inc.*,
135 S. Ct. 1378 (2015) ........................................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. 13

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
239 U.S. 441 (1915) .............................................................................................. 18

*Byers v. City of Cincinnati*,
No. 1:13-CV-339, 2014 WL 1302624 (S.D. Ohio Mar. 31, 2014) ......................... 14

*Dalton v. Specter*,
511 U.S. 462 (1994) .............................................................................................. 5-6

*Dames & Moore v. Regan*,
453 U.S. 654 (1981) ............................................................................................ 5, 6

*Electricities of N.C., Inc. v. Se. Power Admin.*,
774 F.2d 1262 (4th Cir. 1985) ............................................................................ 6, 7

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ............................................................................................ 3, 4

*Giarratano v. Johnson*,
521 F.3d 298 (4th Cir. 2008) ............................................................................... 14

*Hawaii v. Trump*,
No. 17-cv-50 (D. Haw. Aug. 13, 2018), ECF No. 415 ........................................ 12

*Heckler v. Chaney*,
470 U.S. 821 (1985) ........................................................................................... 6-7

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir.  2012) ................................................................ 14, 15, 16

*IRAP v. Trump*,
   265 F. Supp. 3d 570 (D. Md. 2017) ................................................................. 4, 7

*IRAP v. Trump*,
   905 F.3d 287 (4th Cir. 2018) ........................................................................... 3

*IRAP v. Trump*,
   138 S. Ct. 2710 (2018) .................................................................................... 3

*Kerry v. Din*,
   135 S. Ct. 2128 (2015) .................................................................................... 18

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972) ........................................................................................ 11

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ........................................................................................ 7

*Minnesota State Bd. for Cmty. Colls. v. Knight*,
   465 U.S. 271 (1984) ........................................................................................ 18

*Perkins v. Dennis*,
   No. 16-cv-2865-TDC, 2017 WL 1194180 (D. Md. Mar. 30, 2017) ........................... 9

*Saavedra Bruno v. Albright*,
   197 F.3d 1153 (D.C. Cir. 1999) ....................................................................... 18

*Smith v. Rubenzer*,
   No. 08-CV-436-BBC, 2008 WL 4301410 (W.D. Wis. Sept. 15, 2008) ..................... 17

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) .............................................................................. *passim*

*Washington v. Trump*,
   No. 17-cv-141 (W.D. Wash. Nov. 5 & Nov. 9, 2018), ECF Nos. 216 & 217 ........... 12

*Webster v. Doe*,
   486 U.S. 592 (1988) ........................................................................................ 6

*Wroblewski v. City of Washburn*,
   965 F.2d 452 (7th Cir. 1992) ........................................................................... 14

## STATUTES

5 U.S.C. § 701(a)(2) ............................................................................................ 6

8 U.S.C. § 1182(f) ....................................................................................... 5, 6, 7, 9

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................. *passim*

Fed. R. Civ. P. 54(b) ........................................................................................... 3

## OTHER AUTHORITIES

U.S. Dep't of State, *June 26 Supreme Court Decision on Presidential Proclamation 9645*, http://goo.gl/nQBuWK (last visited Dec. 18, 2018) ................................................ 19

## INTRODUCTION

Despite the Supreme Court's decision in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), in which the Court upheld the validity of Proclamation No. 9645, *Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats*, 82 Fed. Reg. 45,161 (Sept. 27, 2017), the plaintiffs here seek to continue with their claims challenging the Proclamation.  Specifically, plaintiffs assert that the Supreme Court's opinion was only at the preliminary-injunction stage, and thus "the Supreme Court's ruling . . . does not dictate how this Court should rule on similar claims based on a full evidentiary record following discovery."  Pls.' Opp. to Defs.' Mot. to Dismiss at 1; *IRAP* ECF No. 26, *IAAB* ECF No. 82, *Zakzok* ECF No. 66 [hereafter "Pls.' Opp."].

Although the Supreme Court's decision was in the context of a preliminary injunction, plaintiffs do not dispute that the Supreme Court's decision sets forth the governing legal framework for evaluating their claims—and that this legal framework *is* binding on this Court. Under that framework, the Court held that the Proclamation must be upheld "so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds." *Hawaii*, 138 S. Ct. at 2420.  Plaintiffs have not presented a plausible challenge to the Proclamation under this governing framework; in particular, their claims are fundamentally contrary to the Supreme Court's reasoning and holding in *Hawaii*.  Thus, plaintiffs' complaints should be dismissed.

With respect to plaintiffs' statutory claims under the Administrative Procedure Act (APA), the type of intrusive review that plaintiffs are seeking is precisely what the Supreme Court rejected in *Hawaii*.  Plaintiffs' claim is that the Proclamation is unlawful because it "was adopted based on anti-Muslim animus and the purported national security concerns are a pretext lacking any rational basis," Pls.' Opp. at 25, and they contend that this Court must review that claim "based on the full

administrative record, which has yet to be produced." *Id.* at 27.  That is exactly the type of judicial inquiry that the Supreme Court held was foreclosed:  "[Plaintiffs] suggest that the policy is overbroad and does little to serve national security interests.  But we cannot substitute our own assessment for the Executive's predictive judgments on such matters, all of which are delicate, complex, and involve large elements of prophecy." *Hawaii*, 138 S. Ct. at 2421.  The Supreme Court's decision thus further confirms that plaintiffs' statutory APA claims cannot proceed, for both threshold and merits-based reasons.

Similarly, plaintiffs' constitutional claims also fail.  The Supreme Court already considered each aspect of the Proclamation that plaintiffs' allegations focus on here, and the Court determined that "the Government has set forth a sufficient national security justification to survive rational basis review." *Id.* at 2423.  Because plaintiffs' allegations simply re-state the same facts and features of the Proclamation that the Supreme Court already considered, the result should again be the same:  plaintiffs' claims fail as a matter of law.

Accordingly, for the reasons discussed below as well as in defendants' prior memorandum, *see* Defs.' Combined Mem. in Supp. of Defs.' Mots. To Dismiss at 10-28; *IRAP* ECF No. 265-1, *IAAB* ECF No. 81-1, *Zakzok* ECF No. 65-1 [hereafter "MTD Mem."], all three Complaints should be dismissed for failure to state a claim.

## ARGUMENT

Plaintiffs first argue that all of the plaintiffs have adequately established standing.  *See* Pls.' Opp. at 10-12.  To the extent plaintiffs seek to continue these cases as three distinct lawsuits, defendants maintain that the only parties with standing are those individuals whose relatives have applied for a visa and been denied both the visa and a waiver under the Proclamation.  *See* MTD Mem. at 9 n.3.  But assuming that these three cases are treated as a single, combined case—as defendants believe they should be—there is no need for the Court to decide the exact number of

plaintiffs with standing; defendants do not dispute that one of the *IAAB* plaintiffs (John Doe #6) has Article III standing to bring his claims and that his claims are sufficiently ripe. *See id.* In any event, regardless of which plaintiffs have standing, none has stated a valid claim on the merits.

## I.    Plaintiffs' Statutory Claims Under the APA Should Be Dismissed

Following defendants' motion to dismiss, plaintiffs abandoned their non-APA statutory claims against the Proclamation. *See IRAP*, ECF No. 270; Pls.' Opp. at 9 n.3. As for their remaining APA-based claims, those should likewise be rejected. The Proclamation is Presidential action that is unreviewable under the APA, and the type of review that plaintiffs contemplate is contrary to the Supreme Court's holding in *Hawaii*. Moreover, APA review is not permissible based on fundamental principles of non-reviewability.

### A.    Plaintiffs' APA Claims Fail at the Outset for Several Threshold Reasons

In response to the numerous threshold defects with plaintiffs' APA claims, *see* MTD Mem. at 10-14, plaintiffs largely rely on this Court's and the Fourth Circuit's prior decisions at the preliminary-injunction phase. *See, e.g.*, Pls.' Opp. at 23 ("Defendants now rehash the same arguments for Plaintiffs' remaining APA claims but do not explain why this Court should reverse its prior ruling."). But the Fourth Circuit's prior decision has now been vacated, *see IRAP v. Trump*, 138 S. Ct. 2710 (2018), and, as several Fourth Circuit judges noted, this Court's prior conclusions should also be treated as having been overruled. *See IRAP v. Trump*, 905 F.3d 287 (4th Cir. 2018) (Niemeyer, J., concurring) ("[E]ven without any express statement by us, the reasoning and conclusions reached by the district court have been overruled."). Even plaintiffs do not suggest that this Court is *required* to follow its prior rulings. *Cf.* Fed. R. Civ. P. 54(b). Accordingly, for the reasons discussed below, and particularly in light of the Supreme Court's decision in *Hawaii*, this Court should conclude that plaintiffs' APA claims are foreclosed.

**1.** Plaintiffs cannot obtain review over the Proclamation because it is Presidential action

for which APA review is unavailable.  *See* MTD Mem. at 10-11; *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992).  Plaintiffs seek to sidestep this bar by not naming the President himself as a defendant, and instead suing only those agencies tasked with implementing the Proclamation. *See* Pls.' Opp. at 23-24.  But that pleading tactic does not overcome the fundamental defect with plaintiffs' claims—the relevant action being challenged here is issuance of the Proclamation *by the President*, not any *implementation* of the Proclamation by a subordinate agency.  Plaintiffs' own description of their claims confirms that they are challenging Presidential rather than agency action:  they are not challenging "'individual visa decisions by consular officers, but the overarching travel ban policy imposed by the Proclamation.'"  Pls.' Opp. at 30 (quoting *IRAP v. Trump*, 265 F. Supp. 3d 570, 602 (D. Md. 2017)).  In other words, plaintiffs are challenging the decision *by the President* to issue the Proclamation in the first instance, which is clearly a challenge to Presidential action rather than agency action.

Indeed, plaintiffs' later arguments underscore the nature of their claims (and the danger of accepting their theory).  Simply by naming agency heads (instead of the President) as defendants, plaintiffs argue that they can compel the Government to produce "the entire administrative record," including the privileged and classified "agency reports" preceding the Proclamation, and then ask this Court to determine whether "the restrictions imposed by the Proclamation are adequately supported by [the] administrative record."  Pls.' Opp. at 28.  That type of review—evaluating whether the President's decisions are consistent with the APA's standards—is exactly what the Supreme Court has held is unavailable:  "We would require an express statement by Congress before assuming it intended the President's performance of his statutory duties to be reviewed for abuse of discretion."  *Franklin*, 505 U.S. at 801.  Such review of the President's decisions would offend the separation of powers just as much as if the President were directly named as a defendant.

*See Ancient Coin Collectors Guild v. Customs & Border Prot.*, 801 F. Supp. 2d 383, 403 (D. Md. 2011) ("Although agencies . . . occupy a different 'constitutional position' than does the President, when those agencies act on behalf of the President, the separation of powers concerns ordinarily apply with full force—especially in an area as sensitive and complex as foreign affairs."), *aff'd*, 698 F.3d 171 (4th Cir. 2012).

Plaintiffs seek to distinguish *Ancient Coin Collectors Guild* as involving "a delegation of the President's sole authority to negotiate import restrictions on cultural property," whereas here the defendant agencies "have independent responsibilities with respect to immigration administration and enforcement under the INA." Pls.' Opp. at 24 n.14. But the defendant agencies' other responsibilities under the INA are irrelevant; the challenged action here is issuance of the Proclamation, which was done (and could only be done) by the President himself. *See* 8 U.S.C. § 1182(f) (authorizing only the President to suspend entry of aliens by proclamation). Just as in *Ancient Coin Collectors Guild*, therefore, the President has "sole authority" to exclude aliens by proclamation, and the exercise of that authority is unreviewable even when some implementation of the President's authority is delegated to agencies.

Finally, plaintiffs argue that even if APA review is unavailable they can obtain review under the Court's "inherent equitable authority." Pls.' Opp. at 24 (citing *Dames & Moore v. Regan*, 453 U.S. 654 (1981); and *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015)). But the Supreme Court made clear in *Armstrong* that the "judge-made remedy" of an equitable action does not permit plaintiffs to sidestep "express and implied statutory limitations" on judicial review of non-constitutional claims, such as under the APA. 135 S. Ct. at 1384-1385. Thus, the APA's prohibition on review of Presidential action would still apply to a judge-made cause of action. And in any event, this type of non-statutory review is clearly unavailable here because "the statute in

question commits the decision to the discretion of the President." *Dalton v. Specter*, 511 U.S. 462, 474 (1994); *see also* Part I.A.2, *infra*.  Accordingly, plaintiffs cannot rely on either the APA or an equitable cause of action to obtain review of Presidential action.[1]

**2.** Plaintiffs also cannot rely on the APA because the President's decisions under § 1182(f) are committed to his discretion by law.  *See* 5 U.S.C. § 701(a)(2); MTD Mem. at 11.  Plaintiffs respond that the Supreme Court implicitly rejected this argument in holding "that the Proclamation 'comports with the . . . textual limits of § 1182(f).'"  Pls.' Opp. at 25 (quoting *Hawaii*, 138 S. Ct. at 2410).  To the contrary, the Court specifically acknowledged that "[b]y its terms, § 1182(f) exudes deference to the President in every clause."  *Hawaii*, 138 S. Ct. at 2408.  And the Court expressly noted that, in examining the Proclamation's compliance with § 1182(f), it was merely assuming without deciding that some sort of substantive review was appropriate.  *See id.* at 2409 ("[E]ven assuming that some form of review is appropriate, plaintiffs' attacks on the sufficiency of the President's findings cannot be sustained.").  Thus, the Supreme Court's decision does not preclude—and in fact supports—a conclusion that § 1182(f) does not contemplate judicial review. *See id.* (citing *Webster v. Doe*, 486 U.S. 592, 600 (1988)).

Plaintiffs also argue that, under Fourth Circuit precedent, even if a decision is committed to agency discretion the court may still "hear a claim that an agency rested an action on 'considerations that Congress could not have intended to make relevant.'"  Pls.' Opp. at 25 (quoting *Electricities of N.C., Inc. v. Se. Power Admin.*, 774 F.2d 1262, 1267 (4th Cir. 1985)).  As the Fourth Circuit has subsequently observed, however, that statement is hard to square with the Supreme

---

[1] Plaintiffs also mistakenly rely on *Dames & Moore*, which involved a claim alleging deprivation of a property interest, and a Presidential order being asserted as a defense to that claim. *See* 453 U.S. at 666-67, 688-90.  That decision does not establish that a cause of action is always available to challenge Presidential action allegedly in excess of statutory authority, particularly where (as here) the plaintiffs lack any property interests.  *Cf.* Part II.B, *infra*.

Court's decision in *Heckler v. Chaney*, which held that "if no judicially manageable standards are available . . . then it is impossible to evaluate agency action for 'abuse of discretion.'" 470 U.S. 821, 830 (1985); *see Angelex Ltd. v. United States*, 723 F.3d 500, 507-08 (4th Cir. 2013); *cf. Hawaii*, 138 S. Ct. at 2409-10.

In any event, even assuming *Electricities of N.C.* sets forth the correct framework, that decision likewise confirms that plaintiffs' claims are still precluded:

> [E]ven where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations, but they may not review agency action where the challenge is only to the decision itself.

*Electricities of N.C.*, 774 F.2d at 1267.   Here, as plaintiffs acknowledge, the Supreme Court has already concluded that "the Proclamation 'comports with the . . . textual limits of § 1182(f).'"   Pls.' Opp. at 25 (quoting *Hawaii*, 138 S. Ct. at 2410).   Plaintiffs' constitutional claims fail for the reasons discussed below, and plaintiffs also do not allege any failure to follow regulations.   In short, plaintiffs' statutory claim is a challenge "only to the decision itself"—*i.e.*, contending that the Proclamation's "purported national security concerns are a pretext lacking any rational basis." *Id.*   Even if plaintiffs' description of the legal framework were correct, therefore, their APA challenges would still be barred because § 1182(f) is committed to the President's discretion.

**3.**   Plaintiffs' APA claims also fail because they do not challenge a discrete, final agency action.   *See* MTD Mem. at 11-12.   Plaintiffs respond by relying on this Court's prior conclusion that "the Proclamation is already in effect as to certain individuals and is being enforced by federal agencies."   Pls.' Opp. at 25 (quoting *IRAP*, 265 F. Supp. 3d at 604).   The fact that the Proclamation is currently being enforced, however, does not constitute a discrete, identifiable agency action subject to challenge under the APA.   If anything, that argument only confirms the broad, generalized nature of plaintiffs' claims—thus highlighting why they are not cognizable under the

APA.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990).

**4.**  Finally, plaintiffs' APA claims should be rejected because none of the plaintiffs is within the INA's zone of interests.  *See* MTD Mem. at 12.  Plaintiffs again rely on the alleged injury of family separation, *see* Pls.' Opp. at 26, but critically they point to nothing in the INA conferring rights on third-parties (like plaintiffs here) who are not themselves seeking admission but instead seeking the admission of an alien abroad.  Indeed, plaintiffs do not point to *any* specific statutory provisions allegedly protecting their interest in family unity.  Thus, they are not within the statutory zone of interests, as required to bring their APA claims.

**B.**     **None of Plaintiffs' APA Claims Plausibly States a Claim on the Merits**

Even aside from the threshold defects to plaintiffs' claims, those APA claims are also subject to dismissal because they fail to state a valid claim on the merits.

**1.**  With respect to plaintiffs' claim of arbitrary-and-capricious action, plaintiffs argue that the claim cannot be resolved at the motion-to-dismiss stage and instead "must be adjudicated based on the full administrative record, which has yet to be produced."  Pls.' Opp. at 27.  While summary judgment is typically how APA claims are resolved, nothing about the APA alters the antecedent requirement that a plaintiff must allege a plausible claim for relief.  *See* Fed. R. Civ. P. 12(b)(6).

Here, plaintiffs cannot plausibly establish a claim for arbitrary-and-capricious review of the Proclamation.  That type of substantive review is inappropriate given that the Proclamation is a direct embodiment of the President's foreign affairs and national-security judgments.  *Hawaii*, 138 S. Ct. at 2421-22.  Indeed, the Supreme Court in *Hawaii* expressly foreclosed such review: "plaintiffs' request for a searching inquiry into the persuasiveness of the President's justifications is inconsistent with the broad statutory text and the deference traditionally accorded the President in this sphere."  *Id.* at 2409.  It is simply incompatible with the Supreme Court's decision to require the Government to produce an administrative record justifying the President's foreign affairs and

national-security judgments, and then to subject those Presidential judgments to judicial inquiry. Accordingly, there is no impediment to dismissing this claim at the pleading stage.

**2.**   Plaintiffs also allege a claim based on the failure to undergo notice-and-comment rulemaking.  In response to the Government's demonstration that there is no requirement for the President (or any agency) to engage in notice-and-comment rulemaking when the President exercises his statutory authority under § 1182(f), *see* MTD Mem. at 13-14, plaintiffs instead seek to change the nature of their claims:

> Plaintiffs do not contend that the President needed to engage in notice-and-comment rulemaking, but rather that the agencies implementing the Proclamation must do so. For example, the Proclamation requires the Departments of State and Homeland Security to issue "guidance" that sets the eligibility criteria for the Proclamation's waiver provisions.  Such rules and how they are implemented are more than mere "guidance." Rather, they create new law and impose new rights and duties, and thus are substantive rules requiring notice-and-comment rulemaking.

Pls.' Opp. at 28 (citations omitted).  But that claim—that the agencies' guidance documents are subject to notice-and-comment—is wholly irrelevant, because plaintiffs here are challenging the legality of the *Proclamation*, not the legality of agencies' *guidance* regarding the waiver process.

Plaintiffs' complaints here request injunctions against the Proclamation, not against any guidance documents or other discrete actions by the agencies.  *See IRAP*, ECF No. 203, Prayer for Relief; *IAAB*, ECF No. 78, Prayer for Relief; *Zakzok*, ECF No. 62, Prayer for Relief.  Nor do plaintiffs' complaints allege any claims directly against agency guidance documents.  And previously, when the Government consented to plaintiffs' requests to amend their complaints, that consent was based on the understanding that plaintiffs' complaints would continue to challenge only the Proclamation and not any peripheral guidance documents.  Thus, the Court should reject plaintiffs' belated and improper attempt to use their opposition memorandum as a means for amending their complaints.  *Cf. Perkins v. Dennis*, No. 16-cv-2865-TDC, 2017 WL 1194180, at

*3 (D. Md. Mar. 30, 2017) (Chuang, J.) (collecting cases demonstrating that pleadings cannot be amended "merely by raising the issue in [a] brief").

### C.        Plaintiffs' Statutory Claims Are Foreclosed by Principles of Non-Reviewability

Finally, even if plaintiffs' statutory claims could otherwise proceed, those claims should still be rejected based on principles of non-reviewability relating to the Executive Branch's exclusion of aliens overseas.  *See* MTD Mem. at 17-20.  Plaintiffs argue that "[n]othing in the Supreme Court's decision in *Hawaii* casts any shadow on this Court's prior ruling or the consistent determinations of other courts" that statutory claims are reviewable.  Pls.' Opp. at 31.  But plaintiffs fail to grapple with the Supreme Court's acknowledgment that the non-reviewability argument "presents a difficult question."  *Hawaii*, 138 S. Ct. at 2407.  If the non-reviewability principles were as limited as plaintiffs suggest—*i.e.*, applicable only to individual visa decisions but not broad policy challenges—the Supreme Court could easily have said as much.

Tellingly, plaintiffs also do not attempt to explain why their APA claims should be allowed to proceed notwithstanding the overall statutory history—in which both the Supreme Court and Congress have embraced the principle that APA suits cannot be used by aliens abroad to litigate a purported "right" to enter the country.  *See* MTD Mem. at 18-19.  If an individual alien cannot rely on the APA to litigate the refusal of his or her visa application or admission to the country, surely the APA cannot be used to challenge the President's general policies restricting the entry of classes of aliens abroad.

Two other features of plaintiffs' opposition are notable.  First, plaintiffs do not back off from any of the highly intrusive relief they seek in their complaints.  *See* Pls.' Opp. at 31 n.19 (stating that plaintiffs "expect that the evidence will show that such relief is warranted").  For example, plaintiffs have requested (among other things) that the Court "[r]equire Defendants to instruct the consular officials handling the visa applications of Plaintiffs, their families, and

IAAB's invitees and others attending IAAB programs to print and issue the visas and travel documents within 10 days of the Court's order," and "[r]equire Defendants to process without undue delay visa applications submitted by nationals of Iran, Libya, Syria, Yemen, and Somalia[.]" IAAB 2d Am. Compl. ¶¶ 132, 134, ECF No. 78.  Even if the principles of non-reviewability *were* limited to individualized decisions, plaintiffs' own requested relief makes plain that those principles would still be implicated by their claims and their request that the Court insert itself into the adjudications of individual visa applications.

Second, plaintiffs similarly do not back off from any of the highly intrusive discovery they intend to pursue if their claims are allowed to proceed.  *See* MTD Mem. at 20 n.8.  Plaintiffs expressly state that they believe the Government's pre-decisional, classified agency reports must be disclosed, *see* Pls.' Opp. at 28, and presumably they intend to pursue other communications and documents protected by the presidential-communications privilege (and other grounds for withholding).  Again, plaintiffs' intent to conduct intrusive discovery is proof that even their generalized claims can still implicate the separation of powers principles underlying the doctrine of consular non-reviewability.  For this reason as well, all of plaintiffs' statutory claims should be dismissed.

## II.     Plaintiffs' Constitutional Claims Should Be Dismissed

### A.     All of Plaintiffs' Constitutional Claims Are Foreclosed by the Supreme Court's Decision in *Trump v. Hawaii*

In *Hawaii*, the Supreme Court held that constitutional challenges to the Proclamation are governed by the standard set forth in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), and that the Proclamation satisfies *Mandel*'s standard.  *See Hawaii*, 138 S. Ct. at 2417-23.  That decision compels dismissal of all of plaintiffs' constitutional claims here.  Plaintiffs attempt to avoid this result by noting that *Hawaii* involved a preliminary injunction, *see* Pls.' Opp. at 14, but the

Supreme Court's reasoning sweeps more broadly and forecloses plaintiffs' claims even outside the preliminary-injunction context, as explained below.   Indeed, given the far reach of *Hawaii*'s reasoning, several sets of plaintiffs have voluntarily dismissed their challenges to the Proclamation. *See, e.g.*, Notice of Dismissal, *Hawaii v. Trump*, No. 17-cv-50 (D. Haw. Aug. 13, 2018), ECF No. 415; Notices of Voluntary Dismissal, *Washington v. Trump*, No. 17-cv-141 (W.D. Wash. Nov. 5 & Nov. 9, 2018), ECF Nos. 216 & 217.

**1.** Plaintiffs' constitutional claims should be dismissed because the Proclamation satisfies "[a] conventional application of *Mandel*."  *Hawaii*, 138 S. Ct. at 2420.  The President provided "a facially legitimate and bona fide reason" for the Proclamation: "preventing entry of nationals who cannot be adequately vetted and inducing other nations to improve their practices."  *Id*. at 2419, 2421.  Under *Mandel*, that is all that is required.  The Court may not "look behind" this reason or "test it by balancing its justification against the asserted constitutional interests of U.S. citizens." *Id*. at 2419.  Indeed, plaintiffs do not even argue that their constitutional claims could survive the Fed. R. Civ. P.  12(b)(6) standard under a conventional application of *Mandel*.  *See* Pls.' Opp. at 19 (urging the Court to look beyond the face of the Proclamation).

Plaintiffs instead argue that the *Mandel* standard should not apply because in *Hawaii* the Government purportedly "abandoned" the argument that the Proclamation should be upheld "based solely on the face of the document[.]"  Pls.' Opp. at 19.   But the Government did not abandon that argument in *Hawaii*; they merely argued, in the alternative, that the Proclamation satisfies not only the "conventional application of *Mandel*," but also rational basis review (and domestic Establishment Clause jurisprudence) *even if* the Court were to "look behind the face of the Proclamation."  *Hawaii*, 138 S. Ct. at 2420.   Indeed, the Supreme Court opinion expressly states that the Court only assumed—but did not decide—that its review may extend beyond the

face of the Proclamation.  *See id.* ("*For our purposes today*, we *assume* that we may look behind the face of the Proclamation to the extent of applying rational basis review." (emphases added)).

The Supreme Court made clear in *Hawaii* that the "deferential standard of review" embodied in *Mandel* has been "reaffirmed and applied . . . across different contexts and constitutional claims."   138 S. Ct. at 2419; *see also id.* at 2420 n.5 (stating that *Mandel*'s "circumscribed inquiry applies to any constitutional claim concerning the entry of foreign nationals").   This Court, therefore, should apply the *Mandel* standard in determining whether plaintiffs' constitutional claims survive under Rule 12(b)(6).  And, as noted above, plaintiffs do not even argue that their claims can proceed without looking behind the face of the Proclamation.

2.  Even if this Court were to "look behind the face of the Proclamation to the extent of applying rational basis review," *Hawaii*, 138 S. Ct. at 2420, plaintiffs' constitutional claims still would not survive beyond the pleading stage.  As an initial matter, much of plaintiffs' opposition is devoted to arguing how the Supreme Court's analysis might be different based on the evidence plaintiffs hope to compile during discovery.  *See, e.g.*, Pls.' Opp. at 1 ("[T]he Supreme Court's ruling was based on a limited evidentiary record—created without the benefit of discovery—and thus does not dictate how this Court should rule on similar claims based on a full evidentiary record following discovery.").  But this argument about what discovery might show is irrelevant to whether plaintiffs have carried their antecedent burden—to plausibly allege claims sufficient to survive a motion to dismiss under Rule 12(b)(6).  A plaintiff that has failed to carry that burden cannot "unlock the doors of discovery," regardless of what the plaintiff hopes that discovery might show.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also id.* at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").

As for plaintiffs' attempt to demonstrate that their complaints allege plausible claims, they

appear to believe that they need only "allege that the purported justification for the Proclamation is irrational" to defeat a Rule 12(b)(6) motion. Pls.' Opp. at 12. That, however, is not the standard. If it were, no claim subject to rational basis review would ever be dismissed at the pleading stage—as many are, *see, e.g.*, *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008); *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012).

Although the court "take[s] as true all of the complaint's allegations and reasonable inferences that follow," it is required to "apply the resulting 'facts' in the light of the deferential rational basis standard." *Giarratano*, 521 F.3d at 303-04 (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992), and adopting that court's analysis for applying Rule 12(b)(6) to claims requiring rational basis review). Thus, to survive a Rule 12(b)(6) motion, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to governmental [decisions]." *Id.* Put more concretely, the plaintiff "must plead facts that establish that there is not any reasonable conceivable state of facts that could provide a rational basis for the [government's decision]." *Hettinga*, 677 F.3d at 479; *see, e.g.*, *Byers v. City of Cincinnati*, No. 1:13-CV-339, 2014 WL 1302624, at *2 (S.D. Ohio Mar. 31, 2014). If, on the other hand, "a rational basis for the [defendant's] policy" is "conceivable and plausible," the claim should be dismissed for failure to state a claim. *Wroblewski*, 965 F.2d at 460.[2]

Given the Supreme Court's reasoning in *Hawaii*, plaintiffs have not—and cannot—meet their burden. A rational basis for the Proclamation is more than "conceivable and plausible," *id.*; it has actually been established by Supreme Court precedent. Specifically, the Court in *Hawaii*

---

[2] The cases on which plaintiffs rely do not establish a different standard. Two of the cases did not involve Rule 12(b)(6) motions and thus had no occasion to address the standard for such motions. *See* Pls.' Opp. at 15. The third case applied the standard articulated above, dismissing the plaintiff's complaint despite its allegation that the challenged policy was not rationally related to any legitimate government interest. *See id.* at 12; *Giarratano*, 521 F.3d at 304.

held that "the Government has set forth a sufficient national security justification [for the Proclamation] to survive rational basis review" because "there is persuasive evidence that the entry suspension has a legitimate grounding in national security concerns, quite apart from any religious hostility[.]" *Hawaii*, 138 S. Ct. at 2423, 2421.

It does not matter that several *dissenting* Justices would have reached the opposite conclusion. *See* Pls.' Opp. at 16-17. For one thing, the dissent only reached that conclusion "by refusing to apply anything resembling rational basis review." *Hawaii*, 138 S. Ct. at 2421. But, more importantly, to avoid dismissal under Rule 12(b)(6), plaintiffs must "plead facts that establish that there is *not* any reasonable conceivable state of facts that could provide a rational basis" for the Proclamation. *Hettinga*, 677 F.3d at 479 (emphasis added). That showing is not possible given the reasoning of the majority in *Hawaii*, which concluded that there is indeed a "legitimate" and "sufficient" national-security justification for the Proclamation. *Hawaii*, 138 S. Ct. at 2421, 2423. Thus, there is, by definition, a "reasonable conceivable state of facts" that "provide[s] a rational basis for" the Proclamation, and it cannot be negated no matter what facts plaintiffs attempt to plead. *Hettinga*, 677 F.3d at 479.

**3.** Even assuming, *arguendo*, that a plaintiff could allege facts that would negate the Proclamation's national-security justification, plaintiffs have not done so here. All of the allegations of irrationality that plaintiffs make in their complaints are merely rehashed from the briefs in *Hawaii*. The Supreme Court thus already considered these allegations and still concluded that there is a legitimate and sufficient national-security justification for the Proclamation. *Compare, e.g.,* Pls.' Opp. at 4 (alleging that various statements demonstrate the President's discriminatory intent), *with Hawaii*, 138 S. Ct. at 2417-19 (considering those statements and nevertheless concluding that the Proclamation satisfies rational basis review); *and* Pls.' Opp. at 5-

6 (alleging that the baseline criteria and worldwide review process were flawed and that the entry suspension is unnecessary for various reasons), *with Hawaii*, 138 S. Ct. at 2421-22 (addressing each of these allegations and concluding that they do not negate the Proclamation's legitimate national-security purpose because, among other things, courts "cannot substitute [their] own assessment for the Executive's predictive judgments on [national security] matters"); *and* Pls.' Opp. at 7 (alleging that the "waiver mechanism" is flawed and "irrational"), *with Hawaii*, 138 S. Ct. at 2422-23 & n.7 (concluding that allegations regarding the waiver process "do[] not affect [the Court's] analysis").

In short, plaintiffs cannot avoid dismissal by merely rehashing prior insufficient allegations.  Nor are they entitled to discovery to attempt to bolster their rehashed allegations when the Supreme Court has already determined that those allegations (even if further supported) are not sufficient to negate the rational basis for the Proclamation.  *See* Pls.' Opp. at 15-17.

The D.C. Circuit's decision in *Hettinga* is instructive.  *See* 677 F.3d at 479.  As in this case, the plaintiffs there argued that their complaint should survive a Rule 12(b)(6) motion because it alleged facts suggesting that the challenged practice was irrational or for an illegitimate purpose. The court disagreed, explaining that plaintiffs' argument "misstate[d] the relevant legal standard. Even at the motion to dismiss stage, a plaintiff alleging [a claim subject to rational basis review] must plead facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the [government's decision].'"  *Id.*  The court determined that the plaintiffs had not met their burden because "the government provided an explanation [for the challenged practice] that [was] not only rational on its face, but also ha[d] been consistently recognized by the courts as legitimate."  *Id.*

So too here.  The Supreme Court has determined that there is a legitimate and sufficient

national-security justification for the Proclamation.  That is the end of the matter.  Plaintiffs cannot overcome this determination merely by alleging that the Proclamation is irrational, especially when the same allegations on which they rely have already been rejected by the Supreme Court.  *See, e.g.*, *Smith v. Rubenzer*, No. 08-CV-436-BBC, 2008 WL 4301410, at *2 (W.D. Wis. Sept. 15, 2008) ("If a rational basis for the government's actions remains 'conceivable and plausible' in the face of petitioner' allegations, petitioner's . . . claim should be dismissed for failure to state a claim.").[3] Accordingly, all of plaintiffs' constitutional claims should be dismissed, both under a "conventional application of *Mandel*" as well as "look[ing] behind the face of the Proclamation to the extent of applying rational basis review."  *Hawaii*, 138 S. Ct. at 2420.

### B.      Plaintiffs' Constitutional Claims Fail for Additional Reasons

In addition to the reasons discussed above, several of plaintiffs' constitutional claims are independently foreclosed for the reasons described below.

**1.** With respect to due process, plaintiffs argue that "Defendants cannot cite any controlling precedent in support of their argument that U.S. citizens have no constitutionally-derived liberty interest in the reunification of their own families[.]"  Pls.' Opp. at 20.  But it is *plaintiffs*' burden to establish such a protected liberty interest, and they cannot do so here in light of the cases cited in defendants' opening memorandum.  *See* MTD Mem. at 25-26.

Plaintiffs also assert that defendants overlooked an alternative theory for their due-process claim—*i.e.*, that the Proclamation deprives plaintiffs of "the liberty or property interest created by statutory and regulatory provisions that confer on Plaintiffs the unqualified right to petition for

---

[3] Contrary to plaintiffs' assertion, Pls.' Opp. at 1, the Supreme Court's decision to remand *Hawaii* does not mean that this case (or *Hawaii*) can withstand a Rule 12(b)(6) motion.  The Court remanded "for such further proceedings as may be appropriate," *Hawaii*, 138 S. Ct. at 2423, which does not require any particular proceedings or imply that proceedings beyond the pleading stage are necessary or appropriate.

visas on behalf of their relatives." Pls.' Opp. at 20.  But that argument is plainly meritless, because nothing about the Proclamation affects plaintiffs' ability to file petitions on behalf of their relatives who seek family-based immigrant visas.  The Proclamation only affects a subsequent step in the process—*i.e.*, after a U.S. citizen or lawful permanent resident's petition is granted, then the foreign national relative must apply for a visa with a consular officer overseas, and *that* is when the Proclamation's entry suspensions first become operative.  Plaintiffs do not dispute, however, that once "their petition [i]s granted . . . their cognizable interest [is] terminated." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1164 (D.C. Cir. 1999).  Moreover, even if the Proclamation *did* alter the standard by which plaintiffs' petitions were evaluated, that still would not give rise to a cognizable due process claim:  "The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984); *see also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915).

Finally, plaintiffs argue that they should at least be allowed to pursue a due-process claim on behalf of John Doe #6 and his mother-in-law.  *See* Pls.' Opp. at 21.  But that claim—about failure to issue a visa to a particular individual—is precisely the type of claim that plaintiffs have said they are *not* pursuing in this case.  *See id.* at 30-31; Part I.C, *supra*.  In any event, plaintiffs concede that John Doe #6's mother-in-law's visa denial contained a reference to a "statutory citation." Pls.' Opp. at 21.  Under *Hawaii* and the five-Justice majority's interpretation of *Kerry v. Din*, 135 S. Ct. 2128 (2015), that statutory citation was sufficient to satisfy due process:  "In *Din*, Justice Kennedy reiterated that 'respect for the political branches' broad power over the creation and administration of the immigration system' meant that the Government *need provide only a statutory citation to explain a visa denial*." *Hawaii*, 138 S. Ct. at 2419 (emphasis added).

Thus, plaintiffs' due process claim fails even with respect to the only individual whose relative has been denied a waiver.[4]

**2.**   Plaintiffs' claims under the Establishment Clause and Equal Protection Clause also fail because they have not alleged a violation of their *own* rights under those provisions.   *See* MTD Mem. at 26-28.   Plaintiffs do not offer a substantive response beyond relying on rulings that have now been overruled.   *See* Pls.' Opp. at 22.   The Supreme Court expressly did not decide this issue, *see Hawaii*, 138 S. Ct. at 2416, and thus—to the extent this Court even reaches these issues—plaintiffs' claims should be dismissed on this basis as well.

## CONCLUSION

The complaints in all three cases should be dismissed for failure to state a claim upon which relief can be granted.

Dated: December 21, 2018                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            ROBERT K. HUR
                                            United States Attorney

                                            JOHN R. TYLER
                                            Assistant Director, Federal Programs Branch

                                            */s/  Daniel Schwei*
                                            DANIEL SCHWEI (Bar No. 96100)
                                            MICHELLE R. BENNETT (Bar No. 806456)

---

[4] Plaintiffs also assert that "Doe #6's mother-in-law was denied a waiver before she even had the opportunity to apply for it."   Pls.' Opp. at 21 (modifications omitted).   But Doe #6's mother-in-law applied for a visa and had an interview at an embassy.   *See IAAB* 2d Am. Compl. ¶ 16, ECF No. 78.   Thus, she indeed had an opportunity to be heard with respect to the waiver—*i.e.*, as part of the underlying visa application and interview process.   *See* U.S. Dep't of State, *June 26 Supreme Court Decision on Presidential Proclamation 9645*, http://goo.gl/nQBuWK (last visited Dec. 18, 2018) ("There is no separate application for a waiver.   An individual who seeks to travel to the United States should apply for a visa and disclose during the visa interview any information that might demonstrate that he or she is eligible for a waiver.").

Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington DC 20005
Tel: (202) 305-8693
Fax: (202) 616-8460
E-mail: daniel.s.schwei@usdoj.gov